**Ruby SMITH et al., Plaintiffs,**

v.

**Jimmy EARP et al., Defendants.**

**Civ. A. No. 76–0083–0(G).**

United States District Court,
W. D. Kentucky,
Owensboro Division.

April 25, 1978.

Claude H. Bates, Evansville, Ind., Henry C. Neel, Henderson, Ky., for plaintiffs.

William M. Deep, King, Deep & Branaman, Henderson, Ky., for defendants.

J. Quentin Wesley, Morganfield, Ky., applicant for intervention.

Faust Y. Simpson, Thomas E. Simpson, Morganfield, Ky., for Wesley.

## MEMORANDUM OPINION AND ORDER

JAMES F. GORDON, Senior District Judge.

This matter is before the Court on oral motion to reconsider the Court's supplemental order of February 23, 1978, dealing with the apportionment of attorney fees to State Farm Mutual Automobile Insurance Company, a non-party subrogated reparation obligor. For the reasons hereinafter stated, the supplemental order shall stand and the amount ordered to be paid to the non-party subrogated reparation obligor remains reduced by its proportional share of the plaintiffs' attorney fees. A statement of the background facts is helpful.

### Background Facts

This action arises out of an automobile accident which occurred in Union County, Kentucky on July 17, 1975. Jurisdiction is founded upon diversity of citizenship. Four of the plaintiffs were seriously injured and one was killed. The action was brought by Ruby Smith, individually, as guardian for three of her infant children, and as administratrix of the estate of her deceased infant child. All were citizens of Kentucky.

The defendants were Jimmy Earp, operator of the motor vehicle, Salem Leasing Corporation, owner of the motor vehicle, and Suggs and Hardin Furniture Company, lessee of the motor vehicle. None of the defendants were citizens of Kentucky. The vehicle in which plaintiffs were passengers was owned by plaintiff Ruby Smith and operated by John Matt Green.

J. Quentin Wesley, an attorney representing the plaintiffs in the earlier stages of this litigation, intervened to establish an attorney fee lien. The motion for intervention was sustained. By pretrial order the Court noted the claim of the intervenor for the record but required no further action of him pending the final disposition of the suit. The case was set for jury trial on December 1, 1977.

On the day of trial, the jury having been selected but no testimony heard, the Court was advised that the matter had been settled in full as to all claims, including subrogation and third parties, for the sum of $125,000.

By agreed order dated February 13, 1978, the Court made its distribution and alloca-

tion of the settlement sum of $125,000. Of importance to this motion is the distribution made to State Farm Automobile Insurance Company in the sum of $17,140.97. On February 23, 1978, the Court entered a supplemental order whereby it reduced the amount payable to State Farm by $5,713.66, which was assessed as an attorney fee in the collection of the claim of the subrogated reparation obligor.

State Farm was made the assignee of the infant plaintiffs' claims for basic reparation benefits by the Assigned Claims Bureau. *See K.R.S.* § 304.39–170(2) (Supp.1977). The infant plaintiffs qualified for basic reparation benefits under the Assigned Claims Plan because they were injured in Kentucky while passengers in a motor vehicle where neither they nor the owner were insured. *K.R.S.* § 304.39–160(1)(a) (Supp. 1977). *See also,* Uniform Motor Vehicle Accident Reparations Act § 18(a)(1) Comment (identical to *K.R.S.* § 304.39–160(1)(a)) [1].

State Farm, after making the payments of basic reparations benefits, elected not to assert its subrogation claim by intervention as party plaintiff in this suit. Instead, State Farm entered into an agreement with the parties to this suit whereby it would be reimbursed out of the final award. This is evidenced by an agreed order. State Farm objects, however, to the prorata deduction of the plaintiffs' attorney fees from its recovery.

### Issues

State Farm argues that because of its payment of basic reparations benefits as an assignee of the Assigned Claims Bureau rather than through a contract of insurance with the plaintiffs it is not in privity with the plaintiffs and thus not obligated to share the plaintiffs' attorney fees.

The issue is a narrow one. If an insurance company makes basic reparations benefits to an injured party by virtue of an assignment from the Assigned Claims Bureau and elects not to join in the injured party's lawsuit as a party plaintiff in pursuit of its subrogation claims against the defendant, does that insurance company have the right to insist that any agreed upon recovery received by it is not reduced by an appropriate amount representing the plaintiff's attorney fees incurred in bringing about the total recovery? The Court holds that it does not.

### Legal Analysis

It must be understood from the outset that this is a very peculiar factual setting. It is doubtful that parties to such a lawsuit would often find themselves in this situation, especially in state court. The reason requires some explanation.

*K.R.S.* § 304.39–060(2)(a) states:

> Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle, is "abolished" for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor, or that would be payable but for any deductible authorized by this subtitle, under any insurance policy or other method of security complying with the requirements of this subtitle, except to the extent noneconomic detriment qualifies under subsection (2)(b) hereof.

1. Although it represents an issue not decided here, Ruby Smith, the owner of the motor vehicle, would not be entitled to basic reparations benefits either individually or as a survivor under the Assigned Claims Plan. *K.R.S.* § 304.-39–160(4) (Supp.1977) states:

   > A person who sustains injury while occupying a motor vehicle owned by such person and with respect to which security is required by the provisions on security and who fails to have such security in effect at the time of an accident in this commonwealth causing such injury, shall not obtain through the assigned claims plan basic reparation benefits, including benefits otherwise due him as a survivor, unless such person's failure to have such security in effect at the time of such accident was solely occasioned by the failure of the reparation obligor of such person to provide the basic reparation benefits required by this subtitle.

In essence, this provision means that an injured person may not bring a suit for or include in the damages portion of his suit basic reparation benefits already paid or to be paid on account of his injury. Of course, before enactment of the Kentucky No Fault Statute in 1974, the real party in interest problem was circumvented by the use of a loan receipt whereby the injured party pursued the insurance company's subrogation claim without the insurance company becoming a party plaintiff.

The Court seriously questions whether the loan receipt technique is permissible under the new statute. We arrive at this conclusion after closely reviewing the entire Act and considering the interrelationship among several of its provisions. First, as was pointed out earlier, *K.R.S.* § 304.39–060(2)(a) specifically forbids the injured party from bringing an action which includes economic damages to the extent basic reparation benefits are paid or payable under the Act. Second, the Act is most specific in stating how the insurance company recovers the basic reparation benefits it has paid to the injured party. *K.R.S.* § 304.39–070(3) states:

> A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection. *The reparation obligor shall elect to assert its claim (i) by joining as a party in an action that may be commenced by the person suffering the injury, or (ii) to reimbursement, pursuant to KRS 304.39–300,* sixty (60) days after said claim has been presented to the reparation obligor of secured persons. The right to recover basic reparation benefits paid under (ii) shall be limited to those instances established as applicable by the Kentucky insurance arbitration association as provided in KRS 304.30–300. (emphasis added).

■ Note the use of the word "shall." The result is inescapable. The injured party may not assert this part of the claim and the insurance company's options only include joinder as a party plaintiff and arbitration. There is no place for the loan receipt after enactment of the Kentucky No-Fault Act; the Act is unambiguous.

■ Obviously, here neither the plaintiffs nor State Farm pursued their claims in compliance with the Act; however, the defendants never objected and on the day of trial offered to settle all claims including subrogation and third party claims. The Court shall not disturb that settlement. The Court places a high priority on the settlement of suits. Such is well founded in public policy and the principles of judicial administration even when the parties agree to more than they are legally obligated.

It is apparent, nonetheless, that the Kentucky No-Fault Act does not contemplate such a situation as this. Normally, if the subrogated reparations obligor elects to pursue its claim through litigation instead of arbitration, it must join as a party plaintiff, put on its own proof for its part of the damages, and incur its own attorney expenses.

This Court's analysis might not have gone so far except for the fact that we feel that, inasmuch as it concerns the procedural administration of this Court's jury trials, the situation is likely to reoccur although in a much less haphazard manner.

This Court believes that the injured party will not want the reparations obligor to join as a party plaintiff in his suit against the defendant. The injured party will argue that the jury's knowledge of insurance company's involvement will prejudice the amount of his recovery. The merits of this argument are somewhat speculative because the jury may know of the insurance company's involvement anyway, especially if the injured party only claims noneconomic damages such as pain and suffering because he is precluded from the recovery of economic loss to the extent covered by basic reparation benefits. *See K.R.S.* § 304.39–60(2)(a). To this Court's knowledge, the Kentucky state courts have not yet considered this issue. At least one other state has. *See, e. g., De Vincentis v. Maryland Casualty Co.,* 325 A.2d 610 (Del.1974). There the Delaware court stated:

It is true that prior to adoption of compulsory motor vehicle insurance law, Courts have endeavored to prevent the fact of insurance coverage from coming to the knowledge of juries. However, with the advent of no-fault insurance, every motor vehicle owner in this State has become apprised of the requirement that public liability insurance coverage be carried as a prerequisite to motor vehicle licensing. In view of this requirement, it is unrealistic to assume that any jury would be unaware of the statutory requirement, or that the jury would not proceed in the belief that the parties carried at least the required amount of insurance. In recognition of this, it has been common practice in this Court in cases arising since the effective date of the no-fault insurance law to inform the jury during the course of the trial of the fact that certain items which might otherwise be claimed for damages are covered under the no-fault insurance law. Hence, I find no reasonable justification for isolating a cause of action relating to recovery under the insurance policy from the cause of action involving the injuries themselves on the ground that the result would be to disclose insurance coverage to the jury.

Id. at 612–13.

This Court neither has the inclination nor sees the necessity of attempting to determine what the Kentucky state courts would hold when faced with this issue. It is unnecessary as the issue can be avoided as a procedural matter. Even before the enactment of the Kentucky No-Fault Act, this Court was faced with the problem of possible prejudice when an insurance company petitioned to intervene in an action. The Court would allow the intervention, note the presence of the insurance company on the record, and hold its claim in abeyance. The judgment recovered by the plaintiff would be subject to the claim of the intervenor. This would eliminate much confusion during the trial in addition to keeping jury prejudice at a minimum. If the original plaintiff and intervenor could not agree, a hearing would be held following the plaintiff's recovery and dismissal of the jury.

This has been a most effective technique and readily agreed to by the parties during previous pretrial conferences. There is no reason not to continue this approach; it conforms to the statutory requirement that the insurance company join as a party plaintiff but still eliminates the possibility of jury prejudice. It does, however, create a situation where the insurance company is not actively engaged in trying the suit and the question of apportionment of the plaintiff's attorney fees will undoubtedly arise— the issue of the case at bar.

As a threshold matter, State Farm's "privity" argument is without merit. It makes no difference whether State Farm pays basic reparations benefits as an assignee of the Assigned Claims Plan or under a policy of first party insurance with the injured party. K.R.S. § 304.39–170(2) states, "[T]he assignee thereafter has rights and obligations as if he had issued a policy of basic reparation insurance . . . ."

As the Court has pointed out, one should not expect to find Kentucky precedent controlling a legal issue which by statute will not occur; however, a workmen's compensation action decided by the Kentucky Court of Appeals (now Kentucky Supreme Court) in Stacy v. Noble, 361 S.W.2d 285 (Ky.1962), is closely analogous.

In Stacy v. Noble, the facts are different but the principles of law relied upon are fully applicable. There the Court invoked equitable principles and held that one cannot obtain without cost the fruits of an attorney's labor.

We have concluded that regardless of the facts of the initial employment of counsel, if the employee's counsel actually bears the burden of obtaining recovery from the third party, then whoever takes the money is chargeable with a share of the fee. The fee must, however, be a reasonable one.

361 S.W.2d at 289. Applying those principles, the Court holds that State Farm is chargeable with its applicable portion of the

attorney fees incurred in obtaining its part of the total recovery to plaintiff. Therefore,

IT IS ORDERED that State Farm's oral motion to reconsider our supplemental order of February 23, 1978, is OVERRULED.

This is a final and appealable order and there is no just cause for delay.